*Mar. 1841.*

Post and another

v

Boardman and another.

---

## Post and another *vs.* Boardman and Boardman.

Under the "Act to prevent usury," of May, 1837, "borrowers" can come into the court of Chancery, either for discovery or relief, without making any deposit or payment; and in cases of a verdict or a judgment at law, they can now, under the spirit of the act, come in upon precisely the same terms and upon the same principles as other complainants, in cases not affected with usury.

If a party comes into this court in a usury case, and makes a mistake in this court, which makes it necessary for him to apply to the court for a favor, it is competent for the court, as a condition of granting the favor, to compel the party to do equity, by payment of the money actually loaned.

·Mar. 1841.

Post and
another
v.
Boardman
and another.

An usurious loan is negotiated with one member of a firm, when no person was present—the note given for the loan, is sued in the name of the other member·of the firm, and the person who made the loan is called upon as a witness, and declines testifying, on the ground that his interest in the note still remains in him—and a verdiet passed against the defendant.—Held, that this was a case of surprise which would warrant the interference of the court of Chancery; and that the defendants had no adequate remedy by applying to the Supreme Court for a new trial, inasmuch as the plaintiff in the suit at law could not.prove the usury, if the pleadings were amended so as to call upon him as a witness.

The principal and surety in a note, being borrowers, are not compelled· to pay or deposit the money loaned, as a condition of obtaining relief or discovery of an usurious transaction, under the law of 1837.

THE facts in this case will substantially appear from the statement of facts upon the previous hearing of a demurrer in this cause. (*Ante,* p. 333.) Upon the suggestions made on the decision of that demurrer, the complainants amended their bill by stating, substantially, that the usurious negotiation and agreement for a loan was made with Silas Boardman, and without the knowledge of the other defendant, John Boardman, or any other person except the complainant John Post; and that the said John Boardman had no knowledge of the facts in relation to the usurious agreement, and for that reason the complainants did not make the affidavit necessary to enable them to call upon John Boardman as a witness in the suit at law, to prove the usury under the provisions of the "Act to prevent usury." To this amended bill the defendants have demurred separately, to a discovery of the usury, or the facts tending to prove the usury,

1st. Because the complainants have a complete remedy at law, and could obtain at law all they ask in this suit, by moving the Supreme Court to set aside the verdict and to amend their pleas or notice, on the ground of surprise.

2d. Because there was negligence in the complainants, in not informing their counsel of the true state of facts, so that they might have framed their pleadings or notice at law, so as to meet such facts.

3d. Because the complainants should have brought the amount loaned into court, with interest, deducting the payments for usurious interest, before they can have relief.

The cause comes on for hearing again, upon demurrers to the amended bill.

*E. Darwin Smith*, for complainants.

*C. M. Lee*, for defendants.

THE VICE CHANCELLOR. This cause has, upon a previous occasion, been before this court upon demurrer. Upon that occasion the demurrer was allowed, because the bill did not allege distinctly the fact that the plaintiff at law had no knowledge of the alleged usury, and could not prove it if called upon as a witness, under the " Act to prevent usury ;" and because, also, that it did not allege that no other person could prove the usury, except Silas Boardman and the complainant Post. The bill has been in this respect amended, and now alleges that the usurious agreement was made between John Post and Silas Boardman, without the knowledge of any other person ; and that John Boardman, the plaintiff at law, had no actual knowledge in relation to the facts set up in the bill as constituting usury. To this amended bill, there have been new demurrers interposed, the points presented by which it becomes necessary for us again to consider.

As I understand the law defining the boundaries

of the jurisdiction between the courts of law and Chancery, if a person is sued at law, and has any defence which he can legally make in that court, and omits or neglects to make it when it should have been made, this court will give him no relief. This is a general rule. The exceptions to it are, when the defence could not be received as a defence at law—when the defendant was prevented from making or availing himself of it by fraud, accident, surprise, or the act of the opposite party—or when the defendant at law was, at the time, ignorant of the existence of his defence. Farther, as I construe and understand the " Act to prevent usury," passed May 15, 1837, while the legislature did not, by that act, intend to compel the court of Chancery to take jurisdiction of questions of usury, when a perfect remedy, both as to discovery and relief, could be had in courts of law; yet, that by that act they intended to place usury questions, in certain cases contemplated by the act, precisely upon the same grounds, as to equitable jurisdiction, as would be recognised by equity courts in cases not affected with usury. In other words, if, in a case not affected with usury, a defendant at law who had a verdict or judgment rendered against him at law, under circumstances which would entitle him to come to this court by bill for relief, in the nature of a new trial, he can now, if he stands in the relation contemplated by the statute, come here in usury questions for precisely the same relief. Formerly, where a party came into this court for such relief in usury questions, he would not be heard, unless he first did equity by paying the money actually lent, with legal interest. As to a certain class of parties, the " Act to prevent usury," in its 4th sec-

tion, has provided that they may come here without making any such payment or deposit. This section applies only to " borrowers," who are the only class of persons who, in my judgment, are entitled to dis- covery and relief under this act, without making such equitable payment. These complainants must be deemed "borrowers," within the meaning, spirit, and intent of the act. One is the principal, and the other the surety—both liable, in a joint obligation, to the defendants for the payment of the original usurious loan; and both common and legal sense would bring them within the scope of the term " borrowers" used in the 4th section of the act. Standing in this capa- city and under that act, I apprehend that they are entitled to the same relief and upon the same terms as any other persons coming here upon questions not infected with the taint of usury. This seems to be the clear legislative intention; and it is the plain duty of the judiciary to carry it into effect, without inquiring into or cavilling about the policy of the law.

It is true, I apprehend, that when a party at law or in this court has made a slip or mistake so that he is compelled to apply for favor, the boon may be granted to him upon condition of his doing equity. In the former bill, the complainants did not make out a sufficient case to sustain it. They were permitted to amend, which was an act of favor. Perhaps, as a condition of permission to amend, I ought to have required that they should pay the money loaned, or, in other words, do equity. I am inclined to think that, under the spirit of the decisions in all our courts, I should have imposed this as a condition; and that, in neglecting so to do, I committed an oversight. But, either from my own negligence, or because my

attention was not called to it, there was this omission, and the complainants were permitted to amend without any other terms than the payment of the costs of the former demurrer. They have availed themselves of this permission, and it is now too late to correct the error (if error there was)—their amended bill must now be looked upon as an original bill, and must be decided under the principles above laid down. We have only to see whether the *surprise* set up in this bill is sufficient, in ordinary cases, to justify this court in assuming jurisdiction; and if it is, we must give the complainants the benefit of it, without demanding any payment from them even of the money loaned.

It appears from the bill that the note was given to J. & S. Boardman, and that the suit at law was in favor of J. Boardman; and that the declaration at law showed that the note was so made, and that it had been transferred to J. Boardman. It appears, also, that the usurious agreement was made with S. Boardman when no one but the complainant Post was present, and that J. Boardman was ignorant of the usury. Under such circumstances, it would do no good to make the affidavit under " the act to prevent usury," and call upon J. Boardman, for he could testify to no usury. S. Boardman was the only witness; and the declaration seemed to intimate that he had parted with his interest by transferring the note to J. Boardman, and could be used as a witness. He was subpœnaed, and disclosed the fact of his continuing interest in the note, and for that reason declined to testify, as he might do under the authority of Mauran vs. Lamb, 7 Cowen, 174. The complainants were thus, at the moment of trial, unexpectedly deprived of the testimony of the only witness who

could prove their defence. Could they, by any rea-
sonable foresight or care, have prevented this? S.
Boardman committed the usury. The note was exe-
cuted to him jointly with the plaintiff in the suit at
law. He was a partner in business with the plain-
tiff at law, under the name and firm to which the
note was executed. The complainants had every
reason to believe that he would be a reluctant wit-
ness, and no reason to believe that he would volun-
tarily communicate any information upon a private
application. The complainants relied, as most coun-
sel would, upon the state of facts as presented by,
or to be inferred from, the pleadings. It seems to
me that, under the circumstances, they were reasona-
bly surprised by the testimony of the witness, and
unexpectedly deprived of his evidence. That is, that
this presents a case where the court would determine
that there was surprise, if there was any other ground
of defence than usury; and if so, under my view of
the statute, it must be applied to a case of usury.

But the defendants say that the complainants have
a remedy by applying to the Supreme Court on the
ground of surprise, to set aside the verdict and amend
their pleading. If the Supreme Court would enter-
tain jurisdiction of this kind, it is only a jurisdiction
concurrent with that of this court. But if the state-
ments in the bill are true, (and for the purpose of
these demurrers they must be taken so to be,) this
would give no relief to the complainants. If the ver-
dict was set aside and the pleadings amended so as
to call upon the plaintiff at law to prove the usury,
he could not testify to it; and S. Boardman could
no more be examined upon a second-trial, than upon
the first—his interest in the note still continuing.

67

Mar. 1841.
Post and
another
v.
Boardman
and another.

This seems to dispose of all the grounds taken by the demurrer. The complainants were not compelled to go to the Supreme Court, for they could give them no effectual relief. There was no negligence in the complainants in preparing their cause for trial; and the complainants upon this bill, being "borrowers," are not compelled to pay even the amount loaned.

The defendants have made a question whether this note was affected by the act of 1837. The note was made in 1836, but was not prosecuted at law until Sept. 1837, after the act of 1837 was in force; and this court have repeatedly held that the provisions of that act, so far as the remedy and testimony are concerned, applies to notes made before its passage, but prosecuted afterwards. It does not appear when this note was transferred to the plaintiff at law. Indeed, it appears it was not transferred at all to him as sole owner; but if it was transferred before the act went into effect, he being a partner with the usurious lender, must be presumed to have knowledge of the usurious transaction, though perhaps not sufficient to prove the usury as a witness.

I have looked at this case as a simple case or question of usury. For the purpose now before me, it is such, though the bill states a giving of time to the principal, without the knowledge of the surety, which would discharge the surety. If, as in the case of Miller vs. McCan, (7 Paige, 451,) the surety had filed a bill upon that ground in his own name, he, under the authority of that case, would have obtained relief. But though that fact is stated in the bill, yet the bill, so far as the prayer for relief is concerned, puts it essentially upon the ground of the usury—it

asks that the note shall be given up to be cancelled, as to both complainants. As a bill to annul the note on the ground of usury, I have looked at it; and as such, I must decide that the demurrer be overruled, with costs to be taxed.